May it please the Court, Attorney Dennis Siofi for the Petitioner Liu Bingwei. Basically, Your Honors, I would start by saying there was no adverse credibility finding in this case. And there's two issues because Petitioner put forth two claims. One is political opinion slash one-child policy and one is a religious claim. So as far as the political opinion claim, Your Honor, they found no resistance and no past persecution. And I have three points for each. As far as other resistance, Petitioner was denied a birth permit but went ahead and wanted to have the child anyway. That's one. He hid his wife. That's two. And when authorities came to his home on two separate occasions, he lied to them. It doesn't sound like much resistance. Well, I mean, this sounds like Jiang to me, Your Honor. I looked at Jiang. And in that case, the application for permit was also denied. They lived together anyway. So I would argue it's similar to Jiang. And then as far as past persecution, Your Honor. Well, he lost his land. He lost his land. And he was a farmer. So he lost his livelihood as well. Is there any evidence in the record as to how he supported himself after he was deprived of his land? There is no evidence, Your Honor. But I would point out the board cited to matter of TZ. And in that very case, it says government sanctions that reduce an applicant to an impoverished existence may amount to persecution, even if the victim retains ability to afford the bare essentials of life. Well, sure. Substantial economic deprivation can constitute persecution, but not mere economic disadvantage. That's why I asked the question as to what evidence in the record shows that he suffered that type of harm. Afterwards, he was not asked what he did for employment after he no longer was a farmer. But then on top of that, I would also argue that the wife's abortion is a factor. But we have to factor that in under Jiang and under matter of JS. And then he also testified credibly that his wife was depressed and had nightmares and had an IUD put in, so that couldn't have made his life pleasant. So that's as far as political opinion. And then with respect to religion, Your Honor, again, he was found credible, and he was detained for 17 days. And I would challenge the government to point out even a single case where a detention this long was not found to be persecution. I mean, they cite to Gu and they cite to Prasad. Prasad was detained for four to six hours, and Gu was detained for only three days. So our petitioner was detained six times longer. Do we know anything about what occurred during the detention? Yes, he was beaten three times. He was beaten with – he was slapped on his face. He was hit with a baton. He was forced to stand facing the wall, and when he couldn't stand still, they beat him with a baton. And he testified he was interrogated a second and third time, and he was beaten both of those times. And unlike Gu, the government did not lose interest in him because he had to report all the way until he escaped China. Let me ask you this. If we were to conclude that he didn't suffer past persecution, he still has a claim for fear of future persecution. Is that correct? Yes, I would say so, Your Honor, because he credibly testified that police continued to look for him after he left China. And he even testified on page 143 of the administrative record that he was waiting for a sentence from the court when he escaped China. So I would argue that certainly under Cardozo, there is a 10 percent chance of future persecution. Now, I can't – we had so many cases on – immigration cases on calendar today. I'm not sure – I want to make sure I get the facts correct here. Yes. But in this case, the IJA was concerned that he did not produce somebody to verify his continued participation as a Christian? He – yes, Your Honor. Well, he provided a church letter. Right. But the IJA said, you know, you didn't – you could have brought your pastor or somebody to the hearing. That's correct, Your Honor. Right. Yes. And he did not, but – To corroborate his – To corroborate, right. His testimony that he was – A Christian. He testified, if I remember correctly, that in China he was baptized by his friend or brother-in-law or somebody. Right. And then he was baptized for a second time. And then he was – and the IJA raised concerns about that. Why would you go through a second baptism, correct? Right. But I think he gave a good explanation, you know, that he wasn't ready and that basically the pastor told him that the first one was not formal. So – Had he – did the IJA alert him to the need to provide corroborating evidence? Not until her oral decision. You raised that issue before the BIA, but in your blue brief to us, you didn't raise it. Because they did not reach that decision. The board specifically says we need not to address the corroboration issue. That's because they found a lack of persecution, correct? That's right. Yes. Do you think the board should have reached the issue nonetheless? I think so. I mean, but we would – I don't remember if I argued it in the brief or not.  I didn't? Okay. There's certainly lack of – But it was exhausted to the board. I was just curious why. I may have run out of space, Your Honor. I mean, there's a 30-page limit. And then one other factor that the board didn't consider is that he testified he couldn't go to the house church anymore. And I mean, that's the most strongest element of Guo is that he was forbidden to practice his faith. And I think that's pest persecution right there, that he was not able to go to the house church anymore, that he had to practice at home. Would you agree that the standard we apply is whether or not the evidence compels the conclusion that the decision is incorrect? I do, Your Honor. But – Would you agree also – I suspect you're not going to. The really highlighted factor in this case for compulsion, if any exists, is the length of time he was incarcerated. Yes, it is. The second time. And – but there isn't any case that focuses on length as a heightened factor, is there? There is not such a case. However, all the cases on the opposite side are very short detentions, three days, one day. Guo was detained for 15 days. And in that – so that's close. That's two days off. And, whoa, the physical abuse was substantially more violent than in this case. Wouldn't you agree? In a way, yes, Your Honor, if you combine Guo. But if you actually read Guo carefully, they said both instances are pest persecution. The one and a half day and the 15 day. And if you separate them, the persecution is very similar. Three days – my petitioner was beaten three times, and I think that would be very close to Guo. Can I reserve two minutes? Yes. Thank you. Sure. Thank you. Good morning, Your Honors. May it please the Court, Andrew Nsinga on behalf of the Attorney General. Reasonable minds can disagree whether on this record other resistance or past persecution was established. However, under the Court Standard Review, reasonable disagreement does not compel reversal of the agency's factual findings. Petitioner's evidence on the other resistance claim does not compel reversal because there simply isn't minimal evidence of other resistance. Petitioner lied to the family planning authorities. That is it. There's not even evidence that the family planning authorities knew that he was lying to them. That is radically nowhere near what the Court found in Jiang, where the alien had – his spouse had the – or sort of traditional marriage spouse had the abortion. They attempted to get married multiple times, and there was physical and verbal confrontation with the family planning authorities. There's no similarity here to Jiang. Likewise, petitioner's claim that the cancellation of the lease rose the level of persecution is not supported by evidence. As Judge Wynn pointed out, there's no evidence of any economic deprivation. We do know he lost land. That's it. He then remained in China for five years, got a Chinese passport, got a visa to the United States, and flew to the United States. That's all we know. It's petitioner's burden of proof, not the government's burden to somehow ask him questions about how he meets his burden, particularly when he's represented by an attorney. He didn't present that evidence. On past persecution, the record doesn't compel reversal because persecution is an extreme concept. No one's asking the court or anyone to condone the actions of Chinese police in this case. But – Are you shifting over to – The religion claim. The religion claim. No one's asking the court to condone that behavior. But – How about just the notion of detention? I mean, they throw somebody in, incarcerate them for – here, what was it, 17 days? 17 days, Your Honor. I mean – Your Honor, it's not – petitioner can challenge us all petitioner wants, but petitioner has a burden of proof and persuasion. And I'm not aware – What's the meaningful distinction between the facts of this case and the facts of Guo? G-U-O. Well, yes, Your Honor. Well, Li, Guo, and Guo are useful guideposts, but we have to start with the fact that the attorney general makes his determination in the first instance. So the most important distinction is the level of violence. In cases like this, the use of words as semantics becomes particularly important. Petitioner uses the word beaten. I think we need to back away from those words and say what he actually testified to. And, again, this is about condoning this behavior. But in Guo, he was beaten in the face, hit in the face, and then tied to a chair and then beaten with a rod. The beating. In this case, he was told to stand against the wall and hit with a rod once. He said hit. I thought he testified that every time he moved, they whacked him once. Your Honor, the difficulty is the testimony is vague. What he said was hit. And then he said the second time during the second, what petitioner calls a beating, they hit him again. Now petitioner wants to interpret that to some expanse of I was beaten. But that's not what the record compels. This is a factual determination. He was hit during the first incident with a rod, the second rod, and the second time there was physical punishment is what he says. We don't have any elaboration. And what we don't have compared to Guo or Lee particularly is any lasting injury or damage. It's not necessary that there be injury, but it certainly is a factor. What was the lasting injury in Guo? Well, they said that he had bruises on his face. That is an injury. Oh, okay. There was no evidence in Guo about hospitalization. Bruising is the extent of extended injury. But I think the court has often found that, say, being hit in a particular sensitive area, the face often is brought up in cases where persecution is found. Again, being hit in the back with a rod is certainly not a pleasant experience. But it's nothing compared to, say, in Lee, being beaten in the face so you're bloodied and left out in a cold winter day for an hour. It's undoubtedly not as severe as Lee, but comes pretty close to Guo, doesn't it? In both instances, the length of detention was roughly the same. The petitioner in each case was forced to basically renounce his faith and then was let go upon signing a confession affidavit, multiple interrogations, multiple beatings with a rod, no medical treatment necessary. So that's why I'm trying to get you to distinguish the facts. And so you're saying that it's not the length of detention, which is roughly the same, but it's really the severity of the beatings. Severities of the physical confrontations certainly is lesser. Undeniably, the length of detention here is two days longer. But there is no bright-line rule about that. Reasonable minds can really disagree on these issues. There's about 15 or 16 major published cases in this court. And in five of them, Prasad, Guo, Ahmed, Donchev, and Mihailov, there are dissents. There are no bright-line rules here, and everyone has a sort of gut reaction to this. But I think the other thing we can look at, along with Guo, is the severity of the assaulting Guo that did not compel the notion of being persecution. He was hit in the back ten times with a rod. That would appear, although the testimony here is vague, to be more severe than the physical assault that Petitioner faced. And being forced to sign a confession and report to the police, the same thing occurred in Guo. Those are relevant factors, but not necessary to compel the conclusion. Reasonable minds can look at this case and say the physical assault was lesser. And so it's not necessarily persecution. Turning to future persecution, I believe there is a bit of a disagreement about what the board found here. The board's footnote about corroboration said they didn't find corroboration as to past persecution. They didn't address that issue. I believe our brief points out that, however, the immigration judges say about the corroboration relevant to future persecution, because Petitioner didn't corroborate his religious practice in the United States. Well, under our current case law, he didn't get advance notice that he was going to need corroboration. Your footnote addresses that. Your footnote acknowledges Wren, but also acknowledges at that time that the briefs were filed, that we had just issued another case called Oshode, where we said in Oshode that Wren was nothing more than dicta. Correct. Oshode went on bonk, and then after Oshode came a case called Z. And in Z, we made it clear that Wren was a holding. Right. And that notice and an opportunity to produce corroborating evidence was required. Now, I can't figure out what happened on that, because he did raise it to the BIA in his brief, and it seems to, for some reason or other, drop down. I mean, under our current law today, that's what happened here was an error of law on that issue, and it should go back for him to produce his pastor. Well, the difficulty in cases like this is we expect Petitioners to raise legal claims to address how, what occurred here was or was not sufficient. Wren requires notice. Obviously, the government disagrees with that requirement. Well, that's the law of the circuit. I mean, you know. The law of the circuit, yeah. Z and Wren make it clear. But we need an argument as to what, in this case, how what occurred here is not sufficient. At a hearing many years before, the immigration judge had a petition on the stand and asked about the certificates that he had presented because of concern of fraudulent abortion certificates. You know, it's a common problem. Those documents were sent to the forensic experts. Unfortunately, DHS no longer has the resources to test those documents, so they were returned. There's no doubt. And that took a number of years. It took a number of years. Right. And this case was set for merits several times until it was eventually set for the merits hearing on August 31st. So certainly Petitioner knew that there were issues about credibility and a variety of concerns. But what we don't have in this case is argument about how that wasn't sufficient under Wren. Petitioner has to raise claims for his court. Well, I acknowledge that in his blue brief he doesn't raise it. But, you know, I can't quite understand why not. I mean, Wren, the law has changed. I understand. The difficulty is I can't stand here and respond to an argument that I don't know. Presumably, he attends a church nearby, and presumably had he known that he needed to bring somebody from his church, he could have, you know, maybe it would have been possible for him to have brought somebody from his church to testify that he was active at the church, which would have eased some of the concern that the IJ had about whether he was truly a Christian. Perhaps. But even regardless of that, the record doesn't compel the conclusion that he faces future persecution. But wasn't there evidence in the record that the police kept going to his home looking for him? There's evidence that they went once, and they asked the wife where he was, and that he illegally fled. It's unclear how he illegally fled, given he had a passport from the Chinese government, a visa from the U.S. government, and left China with apparently no problem. The difficulty is, even though there's not a credibility finding, he didn't illegally flee. We don't know what that means. We ask to present evidence, and it's not that dissimilar from Gu, where the Court said there was no compelling evidence of future persecution. As such, we ask the Court, deny the petition. Thank you. Your Honors, I think this case is very different from Gu, and counsel is mistaken that Gu had to report. He only reported once or twice. That's actually one of the major elements of the Gu decision, that police lost interest in him. After he reported a couple times, he no longer had to report. They never told him he could not go to the house church. He decided on his own he wasn't going to attend. That's not the case here. Moreover, as counsel mentioned, there is a case called Kwan v. Holder that says no physical injury is required. This case is just like Gu, Your Honor. I would like to read to you the very conclusion of Gu from this very Court. They state, the police then beat Mr. Gu and detained him for 15 days. This treatment rises to the level of persecution on account of his religion. I don't know how much more like woe it can get. And his practice of religion was halted. Gu was an isolated encounter. One time, no more interest in him. Not the case here. He did not say the police only came to look for him once. What he said is the police continued looking for him, and then he gave the date on which they came the last time. That implies they came a number of times to look for him. And finally, there was no credibility issues in this case. The judge did not make an adverse credibility finding. She had concerns with corroboration, which she raised in her oral decision for the first time, but there was no credibility issue in this case. I think, and also, could we consider cumulatively the harm from his one claim and his second claim? I mean, certainly that under Babila would rise to the level of persecution if we consider everything cumulatively because this gentleman suffered harm on both accounts of his claim. So I would argue that it does compel a finding of past persecution. He was detained a very long amount of time. He was beaten three times. He was interrogated three times. He had to report to the police. He could no longer practice his Christian faith, and police continued looking for him. I mean, I think this compels a finding of past persecution. Okay. Thank you, counsel. Thank you, counsel, both of you. We appreciate your arguments, and the matter is submitted. Great day.
judges: Murphy, Paez, Nguyen